IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES HENRY CARLEY,

                Plaintiff;

v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

Civil Action No. 1:14-1441-RGA

MEMORANDUM OPINION

Oderah C. Nwaeze, Esq., Wilmington, DE, Attorney for Plaintiff.

Charles M. Oberly III, United States Attorney, Wilmington, DE; Heather Benderson, Special Assistant United States Attorney, Philadelphia, PA, Attorneys for Defendant.

June 26, 2015

ANDREWS, U.S. District Judge:

Plaintiff, James Henry Carley, appeals the decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-33, 1381-83f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3).

Presently pending before the Court are cross-motions for summary judgment filed by Carley and the Commissioner. (D.I. 8, 10). For the reasons set forth below, the Court grants Plaintiff's motion for summary judgment, denies the Commissioner's motion, and remands for further proceedings.

I.  BACKGROUND

A.  Procedural History

Carley filed his application for DIB on October 8, 2010 and SSI on March 16, 2013, alleging disability beginning on November 22, 2005, due to bipolar disorder, paranoid schizophrenia, and psychosis. (D.I. 6 (hereafter "Tr.") at 123-33, 176-77, 187-90). Carley's applications were initially denied on March 29, 2011 and again were denied upon reconsideration on August 4, 2011. (Tr. at 123-33). Thereafter, a hearing was held before an Administrative Law Judge (the "ALJ") on April 24, 2013. (Tr. at 36-75). At the hearing, the onset date of Carley's disability was amended to September 15, 2010. (Tr. at 39). The ALJ issued an unfavorable decision on May 6, 2013. (Tr. at 15-30). The Appeals Council denied Carley's request for review on October 1, 2014. (Tr. at 1-6). Carley filed this lawsuit on November 26, 2014. (D.I. 1).

## B. Plaintiff's Medical History, Condition, and Treatment

On the amended alleged onset date of disability, Carley was twenty-seven years old and defined as a "younger individual" under 20 C.F.R. § 404.1563(c). (Tr. at 28, 176). Carley has a twelfth grade education and has relevant work experience as a lot attendant, a lubrication technician, a mail sorter, a retail warehouse worker, a retail clerk, a cashier, and a spot welder. (Tr. at 71, 204-05).

Carley's detailed medical history is contained in the record, but the Court will provide a brief summary of the pertinent evidence. Carley suffers from paranoid schizophrenia, bipolar disorder, and has a history of alcohol and substance abuse. (Tr. at 20, 279).

In 2005, Carley was hospitalized and diagnosed with schizoaffective disorder and polysubstance abuse. (Tr. at 252). On August 16, 2010, therapist Linda Young evaluated Carley. Ms. Young diagnosed him with paranoid schizophrenia with psychosis, bipolar disorder, and a history of cocaine and marijuana use. (Tr. at 273, 279). Carley reported having difficulty concentrating, being uncomfortable around people, and sometimes believing he was the Holy Spirit or the Anti-Christ. (Tr. at 273, 276). Carley reported that he currently lived with his parents, but would like to live alone. (Tr. at 276). On a typical day, Carley reported that he exercised, used the computer, and did some yard work. *Id.*

On August 30, 2010, Carley had a follow-up session with Ms. Young and reported problems with anger management and anxiety. (Tr. at 290). At a session on September 23, 2010, Ms. Young observed that Carley seemed to be abstaining from substances, but that he still had problems concentrating. (Tr. at 289). On October 8, 2010, Carley reported having paranoia and discussed his symptoms of psychosis. *Id.* On October 25, 2010, Carley reported that he was

3

still drinking beer and having ongoing social anxiety. Ms. Young advised him not to use alcohol. (Tr. at 288).

On October 29, 2010, Carley began to see Nana Berikashvili, M.D. (Tr. at 284). Dr. Berikashvili diagnosed schizophrenia (paranoid type) and cocaine abuse. *Id.* Carley reported hearing male voices – sometimes very loud – every night. (Tr. at 284). Dr. Berikashvili prescribed him Abilify, Stelazine, Celexa, and Clonazepam. *Id.* On November 12, 2010, at a follow-up session with Dr. Berikashvili, Carley reported a decrease in the voices he previously heard. (Tr. at 283).

On December 1, 2010, Carley saw Ms. Young. (Tr. at 334). He reported "doing well," but had three to four beers daily. *Id.* On December 13, 2010, at an appointment with Dr. Berikashvili, Carley stated that he no longer heard any voices. (Tr. at 324). He reported no depression or psychotic symptoms, but mentioned sleepiness during the day. *Id.* He was recommended to continue the same medications. *Id.* On January 4, 2011, Carley had a routine therapy appointment with Ms. Young. (Tr. at 333). During a January 10, 2011 psychiatric session with Dr. Berikashvili, Carley reported that he still heard voices, mostly in late evenings. (Tr. at 323). Dr. Berikashvili recommended an increase in Stelazine and a decrease in Abilify and prescribed Klonopin and Benzatropine. *Id.*

On January 19, 2011, Carley disclosed to Ms. Young that he had a job interview but was prepared not to be hired. (Tr. at 332). He continued to experience social anxiety and had limited insight into his mental illness. *Id.* On February 7, 2011, he informed Ms. Young that he continued to drink two to three beers daily. (Tr. at 330). On February 24 and April 13, 2011, he visited Dr. Berikashvili and reported that the voices were under control, and that there was no

4

delusional thinking. (Tr. at 322). On April 26, 2011, however, Carley described having some delusions, and Dr. Berikashvili added Gabapentin to his other medications. (Tr. at 321).

On April 29, 2011, Dr. Berikashvili filled out a Mental Impairment Questionnaire (RFC & Listings) for Carley. (Tr. at 352-57). Dr. Berikashvili diagnosed Carley with Schizophrenia (paranoid type). (Tr. at 352). She found that Carley was responding partially to current medications. *Id.* Clinical findings included slight depression, Anhedonia, and multiple kinds of delusions, etc. *Id.*

Dr. Berikashvili opined that Carley was unable to meet competitive standards (that is, unable to perform satisfactorily one's activities independently, appropriately, effectively and on a sustained basis in a regular work setting) in the ability to remember work-like procedures, to understand, remember, and carry out very short and simple instructions, to maintain attention for a two-hour segment, to work in coordination with or proximity to others without being unduly distracted, to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors and changes in a routine work setting, to set realistic goals or make plans independently, and to travel to unfamiliar places. (Tr. at 354).

Dr. Berikashvili further found that Carley had extreme limitations in his ability to sustain an ordinary routine without special supervision, to make simple work-related decisions, to complete a normal workday without interruptions from psychologically based symptoms, to deal with normal work stress, to be aware of normal hazards and take appropriate precautions, to carry out detailed instructions, to deal with stress of semiskilled and skilled work, and to use public transportation. (Tr. at 355). He also had extreme difficulties in maintaining social

5

functioning and had one to two episodes of decompensation within a twelve-month period, each of which lasted at least two weeks. (Tr. at 356). Moreover, even a minimal increase in mental demands or changes in the environment would be predicted to cause Carley to decompensate. *Id.* Carley also had an anxiety related disorder and complete inability to function independently outside the area of his home. *Id.* Dr. Berikashvili estimated that Carley would miss work more than four days a month and stated that he was not abusing alcohol or drugs. (Tr. at 357).

In a therapy session on July 28, 2011 with Ms. Young, Carley appeared to be struggling with his comfort level in his environment. (Tr. at 385). His mental health status appeared to be stable, but he seemed to be experiencing symptoms of delusion or paranoia. (Tr. at 385). He seemed to have stopped substance abuse. *Id.* On January 6, 2012, Carley reported having forgotten to attend his last doctor's appointment. (Tr. at 390). In a March 8, 2012 therapy session, Carley appeared disheveled and reported increased stress and continuing alcohol use. (Tr. at 392). On June 12, 2012, Carley attended a therapy session after forgetting a few appointments. (Tr. at 395). He described periods of "blackout" in which he was not able to think about what he was doing. *Id.* Carley obtained a job through vocational rehabilitation, but walked out on his second day of work due to anti-social problems. (Tr. at 395).

On June 27, 2012, in her report for Delaware Health and Social Services, Dr. Berikashvili suggested that Carley was unable to perform any work for more than twelve months due to his diagnosis of schizophrenia (paranoid type). (Tr. at 358).

On the same day, July 27, 2012, Carley stated that he was not able to work due to his shaking and inability to relax. (Tr. at 397). He had not taken Klonopin for several months because he was "manic" but admitted that Klonopin helped his shaking and drinking problem.

6

*Id*. He felt angry and left abruptly because there was no doctor available to refill his Klonopin that day. *Id*.

On August 7, 2012, Carley began to see Ronald Rosenbaum, M.D., who added BuSpar to his medications. (Tr. at 416). In his follow-up session with Dr. Rosenbaum, Carley disclosed that he was only taking Zyprexa. *Id*.

On January 22, 2013, Carley reported that he could not go out in public without drinking beer. (Tr. at 417). Dr. Rosenbaum refilled his Zyprexa and recommended Carley to continue therapy at least twice a month. *Id*. On January 30, 2013, Carley revealed to Ms. Young that beer was the only thing that helped him with his anxiety. (Tr. at 402). He described having panic attacks to the point of blacking out in unfamiliar places. *Id*. He also had to drink to play video games. *Id*. On March 15, 2013, Dr. Rosenbaum prescribed Carley Zyprexa and Klonopin. (Tr. at 418).

On March 21, 2013, Dr. Rosenbaum completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 359-66). Dr. Rosenbaum diagnosed Carley with bipolar disorder, schizophrenia (paranoid type) by history, and alcohol abuse. (Tr. at 359).

Dr. Rosenbaum found that Carley was "markedly limited" (that is, effectively precluded) in his ability to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes

in the work setting; to travel to unfamiliar places or take public transportation; and to set realistic goals or make plans independently. (Tr. at 361-64).

Dr. Rosenbaum opined that Carley experienced episodes of deterioration or decompensation in work or work-like settings which caused him to withdraw from the situation and/or experience exacerbation of signs and symptoms due to "very little tolerance of others... extreme social anxiety which has caused him to leave work sites abruptly [and] paranoid [and] delusional thinking." (Tr. at 364). Dr. Rosenbaum found that Carley was unable to tolerate even low stress due to his panic disorder. (Tr. at 365). Dr. Rosenbaum estimated that Carley would be absent from work, on the average, for more than three times a month as a result of his impairments or treatment (Tr. at 366). According to Dr. Rosenbaum, the symptoms and limitations detailed in the questionnaire were present for the past eight to ten years. *Id.*

### C. ALJ Decision

In her May 6, 2013 decision, the ALJ found that Carley had severe impairments of schizophrenia, depression, anxiety and history of alcohol abuse, but that these severe impairments did not meet a listing. (Tr. at 21). The ALJ further found that Carley had the residual functional capacity ("RFC") to perform medium work (defined in 20 C.F.R. § 404.1567(c) as jobs that involve "lifting or carrying of objects weighing up to 25 pounds"), with the following limitations: (1) Carley can only conduct simple, unskilled work that is not at a production pace, that is, not paid by the piece or working at an assembly line; (2) Carley can only occasionally interact with co-workers and the general public; (3) Carley can only perform jobs involving low stress, defined as only occasional changes in the work setting and only occasional need to make decisions or to use judgment. (Tr. at 24). Based on this RFC, the ALJ determined

8

that Carley could not perform his past work, but that significant numbers of jobs exist in the national economy that Carley could perform. (Tr. at 29). Accordingly, the ALJ concluded Carley was not disabled. (Tr. at 30).

## II. LEGAL STANDARD

### A. Standard of Review

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2011). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citations omitted).

The Third Circuit has explained that a:

9

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

### B.  Disability Determination Process

Title II of the Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). To qualify for DIB (or SSI), the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(l)(A). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28

10

(3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in a substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. If the claimant is not suffering from a severe impairment or a severe combination of impairments, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, if the claimant's impairments are severe, the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. If a claimant's impairment or its medical equivalent matches an impairment in the listing, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments or impairment combination are not listed or medically equivalent to any listing, then the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted). "The claimant bears the burden of demonstrating an

inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is able to return to her past relevant work, the claimant is not disabled. *See id.*

If the claimant is unable to return to past relevant work, step five requires the Commissioner to determine whether the impairments preclude the claimant from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating "not disabled" finding if claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See id* at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## III. DISCUSSION

Carley makes two primary arguments. (D.I. 8 at 2). First, Carley argues that the ALJ failed to weigh the medical evidence properly by giving the opinions from the treating physicians "little weight" instead of the proper controlling weight in assessing the nature and severity of Carley's impairment. *Id.* Second, Carley argues that the ALJ failed to properly evaluate the credibility of Carley's statements in assessing the intensity, persistence, and limiting effects of his alleged symptoms. *Id.*

### A. ALJ Failed to Properly Weigh the Medical Evidence

12

Carley argues that the ALJ improperly gave little weight, and not the proper controlling weight, to opinions offered by the treating physicians, Dr. Berikashvili and Dr. Rosenbaum. (D.I. 8 at 14). A treating source's opinion on the nature and severity of the claimant's impairment will be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

In the present case, the ALJ gave "little weight" to the opinions that treating psychiatrist Dr. Berikashvili offered in the mental impairment questionnaire on April 2011 that Carley "was unable to meet competitive standards in most areas of abilities and aptitudes needed for unskilled work, as well as no useful ability to function in other areas," and that he was "seriously limited in areas of maintaining regular attendance, asking simple questions or requesting assistance and getting along with co-workers." (Tr. at 27). The ALJ found Dr. Berikashvili's opinions "inconsistent with the contemporaneous treatment notes" that described Carley as "stable." (Tr. at 28). Moreover, the ALJ found that Dr. Berikashvili's statement that Carley was not using alcohol or substances contradicted progress notes reflecting Carley's continuing use of alcohol. *Id.* The ALJ also gave "little weight" to the opinion from the other treating physician, Dr. Rosenbaum. *Id.* The ALJ found that the marked limitations in sustained concentration and persistence, social interactions, and adaptation described by Dr. Rosenbaum, as well as his opinion that Carley was incapable of even low stress work, were inconsistent with the medical records that documented Carley's conditions as stable and controlled. *Id.* Furthermore, the

13

marked limitations described by Dr. Rosenbaum contradicted Carley's reported activities of watching television and playing video games without problems. *Id.*

I will review the ALJ's reasons one by one. First, the ALJ's finding that the two treating physicians' opinions were not credible due to their inconsistency with treatment notes describing Carley's conditions and symptoms as stable and under control is improper. In fact, both physicians' observations that Carley's mental condition was stable, and that his symptoms were controlled, did not contradict their opinions that Carley was unable to meet the competitive standards for unskilled work. In assessing the consistency between treating physicians' opinions on the claimant's ability to work and their treatment notes, the Third Circuit has held that since "the work environment is completely different from home or a mental health clinic" for those who suffer from mental disorders, observations contained in a treating physician's notes that the claimant's condition is "stable and well controlled with medication" do not contradict a treating physician's determination that a claimant is disabled. *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000); *see Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce..."); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008); *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001).

However, the ALJ did have substantial evidence to discount Dr. Berikashvili's opinion. It was inconsistent with the medical record reflecting Carley's continuing use of alcohol. Dr. Berikashvili opined on April 29, 2011 that Carley was not "using alcohol or substances" (Tr. at 315), contrary to medical evidence of record affirming Carley's use of alcohol against his therapist's repeated advice. Although Carley alleged that the treatment notes reflected a period of sobriety shortly before Dr. Berikashvili filled out the mental impairment questionnaire, Ms.

14

Young's therapy session notes for that period demonstrated that Carley still drank two to three beers daily. (Tr. at 330). The factual inconsistency regarding Carley's use of alcohol provides the ALJ with a substantial basis to discount Dr. Berikashvili's opinion. Therefore, the ALJ's decision to give little weight to Dr. Berikashvili's opinion was a credibility decision squarely within her province to make.

On the other hand, the ALJ improperly discounted the opinion from Dr. Rosenbaum, the other treating physician. Specifically, the ALJ found the marked limitation in sustained concentration and persistence described in his opinion in conflict with Carley's reported daily activities of watching television and playing videogames. (Tr. at 28). The Third Circuit has held that an ALJ cannot reject the opinion of a treating physician based on "speculative inferences from medical reports, and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence ... not due to his or her own credibility judgments, speculation, or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer*, 186 F.2d at 429); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) ("the secretary cannot reject those medical determinations simply by having the administrative law judge make a different medical judgment."). Here, in finding the contradiction between the mental capacities described in Dr. Rosenbaum's opinion and those reflected by Carley's daily activities, the ALJ made an unwarranted judgment associating watching television and playing videogames with enhanced mental functional ability without citing any medical evidence to support this association. (Tr. at 28). For this reason, the ALJ's finding of inconsistency is improper. Absent inconsistencies with other substantial medical evidence in the record, Dr. Rosenbaum's opinion is entitled to controlling weight.

Therefore, because the ALJ improperly discredited Dr. Rosenbaum's opinion, the case warrants remand for reconsideration with the proper respect for a treating physician's opinion.

**B.     Carley's credibility**

Carley also alleges that the ALJ failed to properly evaluate his credibility. The ALJ found that Carley's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. at 25). However, the ALJ concluded that Carley's statement concerning the intensity, persistence, and limiting effects of symptoms caused by his medically determinable impairments were not entirely credible. (Tr. at 26).

There is a two-prong test for assessing the credibility of an individual's statements. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) ... that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p (1996 WL 374186). Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* In doing so, the ALJ "must take a finding on the credibility of the individual's statements based on a consideration of the entire record." *Id.*

The ALJ's findings on the credibility of a claimant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" and because the ALJ, rather than the district court, had the opportunity to witness first-hand testimony of the claimant. *Irelan v. Barnhart*, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citing *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997)). As for the ground for rejecting evidence, "the ALJ is not required to supply a comprehensive explanation

for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

In this case, the ALJ provided explanations for her adverse credibility finding, which was largely based on the inconsistency between Carley's statements with the medical evidence in the record. Specifically, Carley described the debilitating effects of his mental impairments (Tr. at 25), but the record shows that Carley's symptoms remained controlled when under treatment. (Tr. at 26). The ALJ also noted that Carley "was not entirely compliant with his medication regimen and therapy schedule" and kept drinking against repeated advice. *Id*. Moreover, despite Carley's reported social anxiety, he participated in various social activities, including taking his nieces and nephews on an outing. *Id*. He had problems concentrating, but was able to "maintain focus during the therapy session." *Id*.

For the foregoing reasons, the ALJ's assessment of the credibility of Carley's statements is entitled to deference. Her adverse credibility finding on Carley's statements is supported by substantial evidence.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment (D.I. 8) is granted; the Commissioner's Motion for Summary Judgment (D.I. 10) is denied. The matter will be remanded for proceedings consistent with this opinion.

A separate order will be entered.